UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRYAN BURTON, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) Case No. 1:17-cv-02130-TWP-TAB ) |
| CITY OF FRANKLIN, TIMOTHY O'SULLIVAN, Individually and in his Official Capacity as Chief of Police, | ) ) ) ) |
|     Defendants. | ) ) |

### ENTRY ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants City of Franklin's ("Franklin") and Timothy O'Sullivan's ("O'Sullivan") (collectively, "Defendants") Motion to Dismiss. (Filing No. 11.) Following Plaintiff Bryan Burton's ("Burton") termination, stemming from disciplinary action by the Franklin Police Merit Commission (the "Commission") for Conduct Unbecoming an Officer, Burton filed this action asserting violation of his rights under the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. The Defendants move to dismiss Burton's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing Burton has inadequately pled a cognizable *Monell* claim against Franklin and he cannot establish liability against O'Sullivan. For the reasons stated below, the Defendants' Motion to Dismiss is **granted**.

### I.    BACKGROUND

Burton served as a merit officer for the Franklin Police Department ("Franklin PD") for 16 years, and he was 42 years old at the time of his termination. (Filing No. 1 at 2.) On October 23, 2016, Franklin PD officers responded to a 9-1-1 call reporting a domestic disturbance at Burton's residence. *Id.* Because Burton was an officer within their department, Franklin PD officers

requested assistance from the Johnson County Sheriff's Department so that the investigation could be conducted without a conflict of interest. *Id.* Ultimately, both Burton and his wife, Jordan Burton, were arrested and booked into the Johnson County Jail for alleged domestic violence. *Id.* at 3. Subsequently, the Johnson County Prosecutor, and two special prosecutors, found that probable cause did not exist for the arrest of either Burton or his wife. All three prosecutors declined to file charges. *Id.*

On October 24, 2016, the day after Burton's arrest, Franklin Chief of Police O'Sullivan brought a disciplinary charge against Burton to the Commission for Conduct Unbecoming an Officer. *Id.* Burton alleges that O'Sullivan asked the Commission to terminate his employment at Franklin PD. The Commission terminated Burton's employment in May 2017. *Id.* Burton alleges that "O'Sullivan's termination of Burton was part of a systematic effort to drive out older, experienced officers who possessed independent judgment and to replace them with a younger force." ([Filing No. 1 at 4](#).) In furtherance of that effort, Burton alleges that he was satisfactorily performing his duties as a police officer and O'Sullivan had hired several officers in their twenties who had prior criminal records and allowed several younger officers to remain employed when they faced allegations of criminal conduct that did not result in criminal charges. *Id.* at 3.

## II. LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III. DISCUSSSION

Burton alleges that his termination was part of a systematic effort to drive out older, experienced officers and to replace them with a younger force. (Filing No. 19 at 2.) Franklin moves to dismiss the Complaint, asserting that Burton fails to state a claim for *Monell* liability and his claims against O'Sullivan in his individual and official capacity are insufficient. (Filing No. 12 at 3, 7.) The Court will address each argument in turn.

**A.** *Monell* **Claim**

Section 1983 provides a claim against a person acting under color of law who deprives another of a federal right. 42 U.S.C. § 1983. A municipality is subject to § 1983 liability if one of its policies caused the plaintiff's harm. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978); *Abbott v. Vill. of Winthrop Harbor,* 205 F.3d 976, 981 (7th Cir. 2000). An underlying constitutional claim "is a necessary element of a *Monell* claim." *White v. City of Chicago,* 829 F.3d 837, 844 (7th Cir. 2016).

> Courts have identified three ways in which a municipality can be liable to a plaintiff for a civil rights violation resulting from government policy:
>
> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Abbott,* 205 F.3d at 981. Franklin contends that Burton's Complaint does not allege sufficient facts to support a valid *Monell* claim under any of the three enumerated ways in which a municipality can be liable to a plaintiff. (Filing No. 12 at 3.) Burton concedes that there was no express policy which caused a constitutional deprivation, thus the Court must consider whether the Complaint alleges facts that support a widespread practice constituting a custom, or if the constitutional injury was caused by a person with final policymaking authority. (Filing No. 19 at 7.)

To demonstrate the existence of an unexpressed municipal policy or custom, Burton must show a pattern of multiple incidents of unconstitutional conduct resulting from the policy. *Warner v. City of Terre Haute,* 30 F. Supp.2d 1107, 1120-21 (S.D. 1998) (citing *Baxter by Baxter v. Vigo Cty. Sch. Corp.,* 26 F.3d at 728, 735 (7th Cir. 1994). Mere boilerplate claims that a policy exists will not be sufficient. *Id.* at 1121. In *McCauley v. City of Chicago,* the Seventh Circuit affirmed a dismissal on an equal protection claim, and went through an extensive analysis of *Twombly/Iqbal*. 671 F.3d 611 (7th Cir. 2011).

> We have interpreted *Twombly* and *Iqbal* to require the plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. The degree of specificity required is not easily quantified, but "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010). The required level of factual specificity rises with the complexity of the claim. *Id.* at 405 ("A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

*Id.* at 616–17 (citation omitted). Legal conclusions or a formulaic recitation of the cause of action may be disregarded in a motion to dismiss. *Id.* Burton's Complaint alleges only that O'Sullivan terminated him as part of a systematic effort to drive out older, experienced officers and to replace them with a younger force. (Filing No. 1 at 4 ¶ 27.) This is a boilerplate legal conclusion that the

4

Court must disregard. The *McCauley* court disregarded a similar factual allegation, on an equal protection claim which read: "McCauley alleges that the City 'has an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence' and that '[t]here is no rational basis for this purported policy.'" *Id.* at 617. ("These are the legal elements of the various claims McCauley has asserted; they are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*.") *Id.* at 618.

Having disregarded the boilerplate legal conclusion, the Complaint contains two additional factual allegations in support of Burton's *Monell* claim: (1) "O'Sullivan has allowed several younger officers to remain at FPD when they faced allegations of criminal conduct that did not result in criminal charges"; and (2) "O'Sullivan has hired several officers in their twenties who had prior criminal convictions." ([Filing No. 1 at 3](Filing No. 1 at 3) at ¶¶ 25-27.) The *McCauley* opinion is instructive with regards to the remaining factual allegations as well. The *McCauley* court noted the complexity of equal protection claims in distinguishing between plausibility in the context of an equal protection claim and a housing-discrimination claim. *Id.* at 619. The court held where allegations are just as consistent with lawful conduct as it is with illegal conduct it stops short of the line between possibility and plausibility. *See id.* at 616 (quoting *Twombly,* 550 U.S. at 557). ("At most, the factual allegations in the complaint plausibly suggest the uneven allocation of limited police-protection services; they do not plausibly suggest that the City maintained an intentional policy or practice of omitting police protection from female domestic-violence victims as a class.") *Id.* at 619.

Here, Burton's Complaint acknowledges that the disciplinary action (handed down from the Commission) ensued after he and his wife were arrested on domestic violence charges. ([Filing No. 1 at 3](Filing No. 1 at 3).) While the charges were later dismissed, an arrest is just as consistent with a for cause

termination—*i.e.* a lawful termination—as it is with an overall illegal conspiracy to drive out older workers. Thus, Burton fails to meet the plausibility threshold of establishing a *Monell* claim for an equal protection violation against older workers as he has not alleged facts sufficient to support a widespread practice constituting a custom theory for municipal liability.

Burton has requested leave of the Court to amend his Complaint to describe in greater detail the alleged widespread discriminatory practice if the Court finds his allegations in ¶¶ 25-27 of his Complaint are insufficient to state a plausible claim for municipal liability. In support, he states that he has identified approximately ten instances of younger officers who were alleged to have committed criminal acts (including violent behavior) known to O'Sullivan who also were not criminally prosecuted, but who were not disciplined or referred to the Commission for Conduct Unbecoming a Police Officer. ([Filing No. 19 at 7-8](#).) While the Court finds that the Complaint does not allege sufficient facts to support a widespread practice for Burton's termination, the Court will **grant** Burton leave to amend his Complaint.

Next, Burton alleges a *Monell* claim on the third basis. He argues municipal liability exists because O'Sullivan, as Franklin PD Chief, is the final policymaker with regards to policies of his municipal police department. *See Eversole v. Steele,* 59 F.3d 710, 716 (7th Cir. 1995). However, for purposes of § 1983 liability, the decision maker for any given action depends on who is "at the apex of authority for the action in question." *Perry v. City of Indianapolis,* 1:11-cv-172-RLY-TAB, 2013 WL 1750747 at *6 (S.D. Ind. April 23, 2013) (quoting *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). "The 'power to manage the members of a municipal police department is distinct from the power to fashion policy on behalf of the City.'" *Id.*

In *Perry,* the police chief referred an officer for criminal prosecution to the prosecutor for alleged police misconduct. *Id.* at *7. The prosecutor investigated, a grand jury hearing was held, and an indictment was returned. *Id.* Then-Chief Judge Richard L. Young held that the police chief did not act as a final policymaker for the police department regarding whether criminal charges were filed against the officer, and as a result could not show that her constitutional injury was caused by a person with final policy making authority. *Id.*

Another case from this court has addressed final policymaker authority with regards to police personnel decisions. "However, the policymaker determination in *Eversole* was made with respect to the rules and regulations governing arrests. Here, the question is who had final policymaking authority with respect to workplace rules and duty assignments for members of the police force." *Warner v. City of Terre Haute, Ind.,* 30 F. Supp. 2d 1107, 1123 (S.D. Ind. 1998). While the Complaint alleges that O'Sullivan "brought" charges against Burton to the Commission for discipline, the Commission held the final decision making power to terminate Burton, which it did. Accepting as true that O'Sullivan referred Burton to the Commission for discipline, he did not cause the constitutional injury that Burton asserts because the final policy making authority was vested in the Commission. Because Burton has failed to allege a plausible claim in support of a widespread practice or that his constitutional injury was caused by someone with final decision making authority, Defendant's motion to dismiss the *Monell* claim against the City of Franklin is **granted**.

Again, Burton requests leave to amend his Complaint to add the Commission as a necessary party should the Court agree that the apex of authority for his termination decision rested with the Commission and not O'Sullivan. The Court **grants** Burton leave to amend his Complaint to add the Commission as a party.

7

**B. Official/Individual Capacity Claims against O'Sullivan**

"Under 42 U.S.C. § 1983, official capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent.'" *Monell,* 436 U.S. at 690 n. 55. Any "official capacity claims are really claims against the government entity." *Campbell v. Town of Austin,* No. NA 01-222-C H/K, 2004 WL 256343, at *4 (S.D. Ind. Feb. 10, 2004). The Court agrees with Defendants that the suit against O'Sullivan in his official capacity must be dismissed as duplicative of the claim against Franklin.

"A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea,* 856 F.3d 469, 478 (7th Cir. 2017) (citation omitted). "While the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he or she must nonetheless have 'known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see.'" *Id.*

Burton contends that despite the fact that the Commission approved and imposed his termination, O'Sullivan's preferring this matter to the Commission was the "animating force" behind his termination. ([Filing No. 19 at 6](Filing No. 19 at 6).) He argues the termination decision was motivated by O'Sullivan's discriminatory practice of favoring younger workers over older workers. O'Sullivan responds that he cannot be liable in an individual capacity because he did not have the authority to terminate Burton's employment. The Court agrees.

Burton has not alleged sufficient facts to support a theory that O'Sullivan had personal responsibility for causing any constitutional violations—*i.e.* Burton's termination—that the Commission, the final decision making authority imposed. O'Sullivan followed procedure in preferring charges after Burton's arrest for conduct unbecoming an officer, and the Commission

carried out its exclusive duty in investigating and imposing discipline. Ind. Code. § 36-8-3.5-17[1]. Franklin has elected to establish a merit (civil service) system under I. C. § 36-8-3.5. If a merit system is established, the city's merit commission has "exclusive authority over the appointment, discipline, demotion, promotion, and suspension of police officers." *Warner v. City of Terre Haute*, 30 F.Supp.2d 1107, 1122-23 (S.D. Ind. 1998) (emphasis added); I.C. § 36-8-3.5-17. The Complaint does not support the allegation that O'Sullivan was sufficiently responsible for depriving Burton of his constitutional rights for preferring charges for discipline the day after he was arrested on a domestic violence charge. (*See* Filing No. 1 at 3.) Accordingly, the Court **grants** O'Sullivan's Motion to Dismiss in his individual and official capacities.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED.** (Filing No. 11.) Dismissal of the claims against the City of Franklin are **without prejudice**. The claims against Defendant O'Sullivan are dismissed **with prejudice**. The Court **grants** Burton leave to amend his Complaint regarding the claims against the City of Franklin, within **fourteen (14) days of the date of this Entry.**

**SO ORDERED.**

Date: 3/27/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[1] Ind. Code. § 36-8-3.5-17(c) specifically provides: If the chief of the department, after an investigation within the department, prefers charges against a member of the department for an alleged breach of discipline under subsection (b)(2)(H) conduct unbecoming a member,…a hearing shall be conducted upon the request of the member.

DISTRIBUTION:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

Daniel Joseph Layden
WILLIAMS BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com

Toni M. Everton
FAEGRE BAKER DANIELS LLP (Indianapolis)
teverton@wbwlawyers.com

William W. Barrett
WILLIAMS HEWITT BARRETT & WILKOWSKI LLP
wbarrett@wbwlawyers.com