UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRYAN BURTON,                              )
                                           )
        Plaintiff,                        )
                                           )
        v.                                )  No. 1:17-cv-02130-JPH-TAB
                                           )
CITY OF FRANKLIN,                          )
and the FRANKLIN POLICE MERIT              )
COMMISSION,                                )
                                           )
        Defendants.                       )

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Bryan Burton claims that he was terminated from his position as an officer with the Franklin, Indiana Police Department because of his age. Defendants have moved for summary judgment, arguing that Mr. Burton was terminated because of misconduct and his disciplinary history. Dkt. [62]. Mr. Burton has not designated any evidence that could support an inference of age-based discrimination, so no reasonable jury could find in his favor. Therefore, Defendants' motion is **GRANTED**.

**I.
Facts and Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Burton and draws all reasonable inferences in his favor. *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. Mr. Burton's employment and disciplinary history with the Franklin Police Department

Mr. Burton was hired by the City of Franklin Police Department (the "Police Department") as a police officer in the early 2000s. Dkt. 63-2 at 5.

Officers of the Police Department were subject to a two-tiered discipline system under which the chief of police had the authority to reprimand or suspend an officer for up to five days. Dkt. 63-1 ¶ 8. When the chief of police believed that more severe discipline was warranted, he could refer a charge to the Franklin Police Merit Commission (the "Commission"). *Id.*

Mr. Burton was disciplined by the Commission in March 2010 and again in May 2015. Dkt. 63-2 at 7; dkt. 63-3 at 4. The March 2010 incident involved eight violations of the Police Department's rules and regulations and resulted in a 45-day suspension. Dkt. 63-2 at 7–8, 10-11. The allegations that led to the March 2010 suspension—including engaging in inappropriate, sexually suggestive conversations, providing a minor with alcohol, and drinking alcohol on the job—led Franklin's Mayor to write an open letter to the citizens of Franklin defending the Commission's decision to only discipline, rather than terminate, Mr. Burton. Dkt. 63-2 at 8, 13-14. The May 2015 incident involved two violations of the Police Department's rules and regulations and resulted in a sanction of 15 work days without pay. Dkt. 63-3 at 4–13.

Together, these prior disciplinary actions resulted in 60 days' unpaid work or suspension. Dkt. 63-2 at 10; dkt. 63-3 at 13. Nevertheless, one of Mr. Burton's supervisors during this time believed Mr. Burton was "an excellent

police officer" and gave him high marks in his performance evaluations. Dkt. 72-6 ¶¶ 4–5.

B. **The October 23, 2016, incident that resulted in disciplinary charges against Mr. Burton**

On October 23, 2016, the Johnson County Sheriff's Department received a 911 call from Mr. Burton's stepson, who said his parents were "fighting," that there was "pushing," and that his stepdad "grabbed" his mom. Dkt. 63-3 at 24 ¶¶ 44–46. The police responded and arrested Mr. Burton for battery. *Id.* at 27–28 ¶ 78. The county prosecutor declined to file criminal charges against Mr. Burton. Dkt. 72-8 ¶ 3.

As a result of the arrest, the Chief of Police, Timothy O'Sullivan, sent two letters to the Commission charging Mr. Burton with conduct injurious to public peace or welfare and conduct unbecoming a member of the Police Department. Dkt. 63-3 at 20–21 ¶¶ 14–15. Chief O'Sullivan recommended termination based on Mr. Burton's recent conduct and his prior disciplinary history. *Id.* at 29 ¶ 94.

C. **Proceedings before the Commission regarding the October 23, 2016 incident**

On April 19, 2017, the Commission held a hearing on the charges filed against Mr. Burton. *Id.* at 16. Mr. Burton appeared at the hearing with counsel representing him. *Id.* After the hearing, the Commission deliberated in Executive Session, and the parties submitted proposed findings of fact and conclusions of law. *Id.*

On May 2, 2017, the Commission deliberated again in Executive Session, and issued written findings of fact and conclusions of law concluding that Mr. Burton had violated Police Department Rules and Regulations. *Id.* at 16-35, 50. Based on the evidence submitted at the hearing, the Commission found it was "more probable than not" that Mr. Burton injured his wife, rejecting his claims that her injuries were caused by thorns or were self-inflicted. *Id.* at 30-31. The Commission also concluded it was probable that Mr. Burton lied to Chief O'Sullivan a few days before the arrest when he told Chief O'Sullivan that his relationship with his wife was "great," "perfect," and "could not be better." *Id.* at 32. In his written statement, Mr. Burton admitted that contrary to what he had told Chief O'Sullivan, he and his wife had been having problems for some time. *Id.* The Commission found this deception important because if Mr. Burton had been truthful, he could have been referred to the department's employee-assistance program. *Id.* at 33.

Based on this evidence, the Commission found that Mr. Burton had engaged in conduct injurious to the public health or welfare and conduct unbecoming a member. *Id.* at 33–35. As discipline, the Commission terminated his employment. *Id.* at 36.

Mr. Burton brought this action under 28 U.S.C. Section 1983 alleging that his employment was terminated because of his age in violation of the Fourteenth Amendment's Equal Protection Clause. Dkt. 47 ¶¶ 2, 31. Defendants have moved for summary judgment. Dkt. 62.

4

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante,* 555 F.3d at 584 (citation omitted).

## III.
## Analysis

Defendants argue that Mr. Burton's Section 1983 claim is subject to the constitutional rational-basis review standard that applies to age-based distinctions. Dkt. 65 at 14-15; dkt. 78 at 3-4. Under this standard, Mr. Burton must show he was: "(1) intentionally treated differently from others similarly situated; (2) intentionally treated differently because of his membership in the class to which he belonged; and (3) the difference in treatment was not rationally related to a legitimate state interest." Dkt. 78 at 4.

Mr. Burton does not allege any statements by Chief O'Sullivan or members of the Commission that reflect age-based animus. Rather, he contends the Court should analyze his claim as it would analyze a claim of age discrimination brought under the Age Discrimination in Employment Act ("ADEA") using the *McDonnell Douglas* burden-shifting framework. Dkt. 71 at 7-8. Mr. Burton claims that he can establish a prima facie case of age discrimination by showing that: "1) he was a member of the protected class, 2) that he was meeting the employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) similarly situated employees were who were not members of the protected class were treated more favorably." *Id.* at 7-9.

### A. Mr. Burton has not identified any similarly situated individuals who can be used as comparators.

Under either the *McDonnell Douglas* test proposed by Mr. Burton or the rational basis review test proposed by Defendants, Mr. Burton must identify a suitable comparator to show he was treated less favorably than a similarly situated younger employee. *See [Carson v. Lake Cty., Ind.](), 865 F.3d 526, 536 (7th Cir. 2017)* (*citing [Alston v. City of Madison](), 853 F.3d 901, 906 (7th Cir. 2017)*); *[Barbera v. Pearson Educ., Inc.](), 906 F.3d 621, 629 (7th Cir. 2018)*. To be used as a "comparator," the other person must be comparable to the plaintiff but need not be identical. *[Chaney v. Plainfield Healthcare Ctr.](), 612 F.3d 908, 916 (7th Cir. 2010)* (stating that the court looks "for a substantially similar employee, not for a clone"). When evaluating whether someone is a suitable comparator, the Court considers whether the plaintiff and the proposed comparator "(1) dealt with the same supervisor, (2) were subject to

6

the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe,* 667 F.3d 835, 847 (7th Cir. 2012) (internal quotations omitted). While this is often a question for the factfinder, summary judgment is appropriate when no reasonable factfinder could find that plaintiffs have met their burden on the issue. *Srail v. Vill. of Lisle, Ill.,* 588 F.3d 940, 945 (7th Cir. 2009).

Here, Mr. Burton has alleged five younger Franklin Police officers as comparators: Schuyler Brown, Joshua Stevenson, Brittany Floyd, Matthew Harris, and Justin Stall. He argues that each also engaged in conduct that violated the Police Department's rules and regulations but none were subjected to the same level of discipline. Mr. Burton argues that this supports an inference of age discrimination. But unlike Mr. Burton, none of these individuals had previously been disciplined. Moreover, the conduct that led to their discipline was not similar to the conduct that led to Mr. Burton's termination.

The lack of prior discipline makes these individuals unsuitable as comparators. *Phillips v. Spencer,* No. 18-3347, 2019 WL 6716072, at *3 (7th Cir. Dec. 10, 2019) ("employees without similar disciplinary histories and performance records are generally not similarly situated"). For example, in *Amrhein v. Health Care Service Corporation,* 546 F.3d 854, 860 (7th Cir. 2008), the court rejected a potential comparator who had the same supervisor and was subject to the same standards as the plaintiff but did not have a similar

7

discipline record. The court held that "[w]ithout a similar disciplinary history, [the comparator] cannot be considered 'similarly situated.'" *Id.*

Here, before the incident that led to Mr. Burton's termination, he had been disciplined on two separate occasions for a multitude of offenses resulting in a total of 60 days of unpaid work or suspension. Dkt. 63-2 at 7–8; 10; dkt. 63-3 at 5–13. Prior disciplinary history—a factor Chief O'Sullivan ordinarily considers in disciplinary proceedings, dkt. 63-1 ¶ 14—was one of the reasons that Chief O'Sullivan recommended the termination of Mr. Burton, dkt. 63-3 at 30 ¶ 94.

In contrast, none of the five officers identified by Mr. Burton had previously been disciplined by the Commission. Dkt. 63-1 ¶¶ 11(a), (b), (c), (d), and (f). Moreover, Mr. Burton's discipline in March 2010 had been the subject of an open letter to the citizens of Franklin from the mayor of Franklin defending the Commission's decision to only discipline, rather than terminate, Mr. Burton. Because Mr. Burton had a history of serious disciplinary action against him and the officers he has identified did not, no reasonable jury could possibly conclude that any of the five other officers were "similarly situated" to Mr. Burton. *Srail*, 588 F.3d at 945; *Phillips*, 2019 WL 6716072, at *3.

Additionally, the conduct of these other officers who violated the Police Department's rules and regulations was substantially different from that of Mr. Burton. Joshua Stevenson and Brittany Floyd were disciplined because they delayed reporting information after they had witnessed a fight, even though there was an ongoing Police Department investigation. Dkt. 63-2 at 19–26.

Matthew Harris was disciplined for damaging his police vehicle after he accidently drove off the road.  *Id.* at 31.  And Justin Stall lost seven days of take-home car privileges for a "driving incident."  Dkt. 63-1 ¶ 11(f).  None of these acts are similar to domestic battery.  *See Amrhein,* 546 F.3d at 860 ("[T]he plaintiff must show that the other employee . . . had engaged in similar conduct with such differentiating or mitigating circumstances as would distinguish his conduct or the employer's treatment of him.").

While Mr. Brown was also arrested for domestic battery,[1] dkt. 71 at 9, he admitted to the conduct.  Dkt. 63-1 ¶ 11(a).  In contrast, Mr. Burton was found to have been "untruthful and deceptive" when speaking with Chief O'Sullivan before the incident, dkt. 63-3 at 32, and the Commission rejected Mr. Burton's version of the facts that led to his arrest.  Dkt. 63-3 at 30-33; *see Antonetti v. Abbott Laboratories,* 563 F.3d 587, 592, 592 n.5 (7th Cir. 2009) (holding that the plaintiff who lied about his misconduct was not similarly situated to an employee who did not lie about the same misconduct, because honesty is a mitigating circumstance that differentiates the conduct and the employer's treatment).

---

[1] Mr. Burton also argues that three other officers had prior arrests.  Dkt. 71 at 6–7.  But he alleges only one of those—Justin Stall—as a comparator.  *Id.* at 9–10.  All three of those officers' prior arrests were from before the arrestee was hired as an officer, and Mr. Stall's arrest was for "minor consumption while a college student."  *Id.* at 6.  Therefore, none of those arrests reveal a suitable comparator for Mr. Burton.  *See Amrhein,* 546 F.3d at 860.

### B. The testimony of other officers is not related to Mr. Burton's termination and therefore does not establish a prima facie case of discrimination.

Mr. Burton also argues that the reason given for his termination was pretextual, dkt. 71 at 10-14, citing testimony that "the administration favored younger officers," dkt. 72-5 ¶ 16; *see* dkt. 72-6 ¶ 7. But as explained above, Mr. Burton must first identify a similarly situated comparator. *Carson*, 865 F.3d at 536. Since Mr. Burton has not done so, the Court does not proceed to evaluating whether Defendants' explanation for his termination was pretextual. *Id.* ("We need not concern ourselves in this case with burden-shifting or pretext because plaintiffs have not established a prima facie case.").

Mr. Burton has not identified any comparator who engaged in similar conduct without mitigating circumstances that would distinguish Defendants' treatment of them. Without a suitable comparator, Mr. Burton has failed to provide sufficient evidence that would allow a reasonable jury to conclude that he would have kept his job if he had been younger and everything else remained the same. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).

### IV.
### Conclusion

Defendants' motion for summary judgment, dkt. [62], is **GRANTED**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/3/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

William W. Barrett
WILLIAMS HEWITT BARRETT & WILKOWSKI LLP
wbarrett@wbwlawyers.com

Daniel Joseph Layden
WILLIAMS BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com